1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   TRINIDAD RAMOS, et al.,                No.  1:23-cv-01016-ADA-HBK

12              Plaintiff,                  ORDER GRANTING PLAINTIFF'S *EX
                                            PARTE* MOTION FOR A TEMPORARY
13        v.                                RESTRAINING ORDER

14   FUNDING RUSH, INC., et al.,            (ECF Nos. 6, 7)

15              Defendants.

16

17        On June 20, 2023, Plaintiffs Trinidad Ramos, Diana Ramos, and Eric L. Ramos

18   ("Plaintiffs"), proceeding with counsel, filed the complaint in this action in Fresno County

19   Superior Court against Defendants Funding Rush, Inc., Andrew Adrian Dioli, Ralph Martinez,

20   Jay Turner, Lennar Title, Inc., Lil' Wave Financial, Inc., Superior Loan Servicing, Lexington

21   Mortgage Company, Spiros Cheng, Richard Barns, Katherine Heftman, Silicon Private Capital,

22   Bethany Dioli, and unidentified Does 1-50 (collectively, "Defendants").   (ECF No. 1).

23   Defendants Lexington Mortgage Company and Spiros Cheng properly removed the matter to this

24   Court on July 5, 2023.  (ECF No. 1 at 1-3.)

25        On July 8, 2023, Plaintiffs filed a motion for a temporary restraining order ("TRO") "to

26   stop the foreclosure of [] Plaintiffs['] personal residence, which is set for [a] trustee's sale on July

27   13, 2023."  (ECF No. 8 at 6.)  On July 9, 2023, the Court issued a minute order setting the

28   briefing schedule for Plaintiffs' motion and resetting the hearing on the motion for July 11, 2023,

at 3:30PM via Zoom.  (ECF No. 19.)  On the same date, Defendants Richard Barnes, Katherine Heftman, and Silicon Private Capital, LLC filed an opposition to Plaintiffs' motion.  (ECF No. 18.)   On July 10, 2023, Defendant Lennar Title, Inc. filed a statement of non-opposition to Plaintiffs' motion.  (ECF No. 20.)  As of July 11, 2023, no other Defendants filed oppositions or statements of non-oppositions.  Plaintiffs filed a timely reply on July 11, 2023.  (ECF Nos. 22-25.)  The Court held a hearing on this matter on July 11, 2023.  Brian K. Cuttone appeared on behalf of Plaintiffs. Benjamin Nicholson and Scott Reddie appeared on behalf of Defendant Lennar Title, Inc. Edward Weber appeared for Defendants Richard Barns, Katherine Heftman, and Silicon Private Capital, LLC. Counsel for Defendants Lexington Mortgage Company and Spiros Cheng did not appear. Defendants Funding Rush, Inc., Andrew Dioli, Ralph Martinez, Bethany Dioli, Jay Turner, Lil' Wave Financial, Inc., and Superior Loan Servicing did not appear. For the reasons set forth below, the Court grants Plaintiffs' Motion for a Temporary Restraining Order.

## FACTUAL BACKGROUND

The following facts are from Plaintiffs' Motion for Temporary Restraining Order and Complaint. (ECF Nos. 1, 8.)

Plaintiffs Trinidad, Diana, and Eric Ramos[1] live at 5610 North Hazel Avenue, Fresno, California ("residence").  (ECF No. 7 at 2.[2])  This is their primary residence, and they have resided there since 2006.  (*Id.*)  Plaintiffs are all parties to the refinanced mortgage loan ("Refinance Loan") on the residence.  Plaintiff Trinidad is 67 years old and retired.  (*Id.)* Plaintiff Diana is 63 years old and retired. (*Id.*)  Plaintiff Eric is 26 years old and the son of Trinidad and Diana.  All three Plaintiffs also reside at the residence with Trinidad and Diana's granddaughter, Arianna. (*Id.* at 2.)  Arianna's mother was Trinidad and Diana's daughter who passed away in Fall 2022 due to kidney failure resulting from her diagnosis of Lupus.  (*Id.* at 3.)

In June 2022, Plaintiff Trinidad received an unsolicited call from Defendant Ralph

---

[1] The Court will refer to Plaintiffs by their first names for ease of reference as they all share the last name Ramos.

[2] The Court references to the page numbers assigned by the ECF filing system at the top of the page when these papers were filed.

Martinez, alleged to be an employee of Defendant Lexington and agent of Defendant Funding Rush, Inc.  (ECF No. 7 at 3.)  Plaintiffs allege that Defendant Martinez called Plaintiff Trinidad to ask if he was interested in refinancing his mortgage on his residence.  (*Id.*; ECF No. 1 at 17.)  At this time, Plaintiffs Trinidad and Diana had about $20,000 in medical debt, and Plaintiff Trinidad expressed to Defendant Martinez that he would be interested in refinancing if he could get enough money to pay the $20,000.  (ECF No. 1 at 16.)

Plaintiffs then began the process of refinancing their mortgage.  (ECF No. 1 at 16.) During the negotiation process to refinance the mortgage, Plaintiffs allege that Defendant Martinez made numerous intentional misrepresentations and concealed information to force Plaintiffs to refinance their mortgage.  (*Id.* at 20.)  Specifically, Plaintiffs allege that Defendant Martinez stated that the refinance loan would allow Plaintiffs Trinidad and Diana to cash out from equity associated with the Residence and receive $50,000 at the close of escrow to allow them to pay off their medical debt. (*Id.* at 18.)  He also stated their new mortgage payment would be less than the amount they were paying on their present mortgage.  (*Id.*)  Upon this information, Plaintiffs sent Defendants Martinez, Turner, and Lexington their current bills and payments. (*Id.*) These Defendants then informed Plaintiffs Diana and Trinidad that if their son, Plaintiff Eric, was added to the Refinance Loan, "they were confident that [Plaintiffs would get] approximately $50,000 through a cash-out refinance."  (*Id.* at 19.)  Defendants prepared a Mortgage Loan Disclosure Statement and failed to provide Plaintiffs a copy of the statement nor to advise nor counsel them regarding the ramifications of the disclosure or of entering into the Refinance Loan. (*Id.* at 19-20.)  Plaintiffs did not receive a complete copy of the statement until after the Refinance Loan closed.  (*Id.*)  Plaintiffs then electronically signed a Refinance Loan Application and Residential Loan Application.  (*Id.* at 20, 21.)  Plaintiffs allege that they did not receive the documents to review until after the loan was closed.  (*Id.* at 20.)

Instead of receiving the loan conditions that Defendants represented to Plaintiffs, when Plaintiffs ultimately received the Final Closing Statement and some of the loan documents, they learned that their new loan was different than what they had been told.  (ECF No. 7 at 6.; ECF No. 1 at 24.)  Only upon receiving these documents did they learn the following conditions of

their loan: (1) their new interest rate was 11.99%, (2) amortized over forty years, but due within 24 months in the amount of $348,197.39, (3) that included a late payment fee of $34,900; (4) a monthly payment at $3,516.85; (5) a receipt of $10.45 in cash; (6) broker fees to Defendants Lexington and Funding Rush of $27,855; (7) a default interest rate of 17.99%; (8) a prepayment penalty of $20,922.54. (ECF No. 8 at 7-8). Further, the loan was characterized as a business loan and as a recourse loan that allows lenders to seek a deficiency judgment against Plaintiffs after foreclosure. (ECF No. 8 at 7-8.)

Plaintiffs made four monthly payments under the Refinance Loan in the amount of $1,700 per month but stopped making payments after they learned that the financial management company was not crediting them for their payments.  (ECF No. 7 at 8.)

On February 10, 2022, Defendants recorded a Notice of Default.  (ECF No. 7 at 8.)  On June 20, 2023, Defendants recorded a Notice of Trustee's sale, which is scheduled for July 13, 2023, at 10:00 am.  (*Id*. at 8-9.)  Plaintiffs received this notice and filed the initial complaint on this case on the same day.  (ECF No. 10 at 2.)

## LEGAL STANDARD

The standard governing the issuance of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  "The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'"); *Am. Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).  A plaintiff seeking a preliminary injunction must make a showing on all four of these prongs.  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Ninth Circuit has also held that "[a] preliminary injunction is

4

appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *Id.* at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*)).[3]  The party seeking the injunction bears the burden of proving these elements.  *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (citation omitted) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.").  Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

### A.    Rule 65 Notice

Federal Rule of Civil Procedure 65 requires "the movant's attorney [to] certif[y] in writing any efforts made to give notice and the reasons why it should not be required."  Here, Plaintiffs submitted their proofs of service to all Defendants on July 8, 2023.  (ECF No. 17.)  Therein, Plaintiffs served the notice, the *ex parte* application for a temporary restraining order, the memorandum of points and authorities, request for judicial notice of Plaintiffs' FAC, and multiple declarations submitted in support of the application.  (*Id.* at 2.)  Plaintiffs served Brent R. Phillips, Jay Turner, Funding Rush, Inc., Andrew Dioli, Bethany Dioli, Paul Sherman, Scott Reddie, and Edward T. Weber via e-mail or electronic transmission a copy of the aforementioned documents.  (*Id.* at 3.)  Therefore, the Court finds that issuance of relief on an *ex parte* basis is justified for the reasons set forth above.  As such, the Court turns to whether it may grant Plaintiffs' requested injunctive relief.

///

---

[3]  The Ninth Circuit has found that this "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test."  *All. for the Wild Rockies*, 632 F.3d at 1134.  "That is, 'serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.* at 1135.

**B.      Whether a Temporary Restraining Order is Appropriate**

       1.      <u>Likelihood of Success on the Merits</u>

Plaintiffs contend that they are likely to succeed on the merits of two causes of action asserted in their complaint, particularly their misrepresentation of material facts claim under California Civil Code § 1701(1), Trust in Lending Act ("TILA"), and Real Estate Settlement Procedures Act ("RESPA"), and concealment of and failure to disclose material facts under California Civil Code § 1710(3), TILA, and RESPA.  (ECF No. 8 at 17-23.)  As explained below, the Court finds that Plaintiffs have shown a likelihood of success on their TILA claims sufficient to warrant injunctive relief. The Court will not address Plaintiffs' likelihood of success on the merits regarding their other claims.

According to TILA, creditors[4] must clearly and accurately disclose the terms of a loan, including financial charges, interest rates, and the borrower's rights.  *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998).  To state a claim alleging a TILA violation,[5] a plaintiff must allege specific facts showing that either: (1) the plaintiff did not receive a required disclosure or (2) the plaintiff received disclosures that were not clear and conspicuous.  *See Igou v. Bank of Am., N.A.*, 634 Fed. Appx. 208, 211 (10th Cir. 2015) ("[C]ourts across the country have emphasized that plaintiffs must provide basic details to support TILA claims or those claims will

---

[4] A "creditor" under TILA is a person who both (1) regularly extends consumer credit and (2) is the party to which the debt arising from the consumer credit transaction is initially payable.  15 U.S.C. § 1602(g).  Here, Plaintiffs allege that Defendants engaged in predatory lending, which is "a range of abusive and aggressive lending practices, including deception or fraud, charging excessive fees and interest rates, making loans without regard to a borrower's ability to pay . . . ." *Am. Fin. Servs. Assn. v. City of Oakland*, 34 Cal. 4th 1239, 1244 (2005).  Plaintiffs allege that Defendants, collectively, failed and refused to provide Plaintiffs with a complete and accurate TILA disclosure statement when they serviced the Refinance Loan to Plaintiffs.  (*See* ECF No. 21 at 7.)  The Court finds that Plaintiffs sufficiently allege that Defendants are creditors as it may be inferred that they regularly extend consumer credit and are parties to which the debt arising from the alleged consumer credit transaction is initially payable.

[5] To receive actual damages for TILA violations, a plaintiff must show that the plaintiff relied on inaccurate or incomplete disclosure; the plaintiff suffered a loss; and the plaintiff's reliance caused his loss.  *See Gold Country Lenders v. Smith*, 289 F.3d 1155, 1157 (9th Cir. 2002) ("We join with other circuits and hold that in order to receive actual damages for a TILA violation . . .a borrower must establish detrimental reliance").  Here, the Court focuses on whether Plaintiffs' TILA claims have a likelihood of success on the merits, which does not require a ruling on whether the alleged violations would result in actual damages.

be dismissed . . . ." (citations omitted)); *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 276 (D.D.C. 2012) ("To state a claim under TILA, a 'plaintiff must show either that she did not receive the required disclosures or that the disclosures provided were not clear and conspicuous.").  Material terms of a consumer credit transaction include the following: (1) the annual percentage rate of interest; (2) the finance charge; (3) the amount financed; (4) the total number of payments; and (5) the total sale price, which is the sum of the case price of the property or services, any additional charges, and the finance charge.  15 U.S.C. § 1638(b); *Beach*, 523 U.S. at 412.  A plaintiff may also assert that a defendant included a prepayment penalty (in certain mortgages), imposed balloon penalties, or failed to adequately assess a consumer's ability to repay the mortgage.[6]  *See* 15 U.S.C. § 1639c.  Failure to satisfy TILA subjects a lender to criminal penalties for noncompliance and to statutory and actual damages traceable to a lender's failure to make the requisite disclosures.  *Id.*

>   To be clear and conspicuous, the disclosures, such as the annual percentage rate and finance charge, must appear more prominent than other information in connection with a transaction, based on an objective reasonable person approach.  15 U.S.C. § 1632(a); *see Rivera v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1122 (7th Cir. 2001).  For alleged false and misleading disclosures, courts apply an objective standard to determine if a disclosure violated TILA requirements.  *See, e.g.*, *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980); *McCollough v. Insight Capital,* LLC, No. 2:13-cv-1551-VEH, 2014 WL 2547840, at *2 (N.D. Ala. June 5, 2014).  Overall, courts construe TILA claims liberally in favor of the consumer.  *See Eby v. Reb Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974); *see also Curtis v. Propel Prop. Tax Funding, LLC*, 915 F.3d 234, 239 (4th Cir. 2019); *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060,

---

[6] According to 15 U.S.C. § 1639c, concerning the minimum standards for residential mortgage loans, "no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan."  *Id.* at § 1639(a)(1).  "A determination under this subsection of a consumer's ability to repay a residential mortgage loan shall include consideration of the consumer's credit history, current income," and more.  *Id.* at § 1639c(a)(3).  Courts have held that creditors violated TILA by failing to verify homeowner's income.  *See, e.g.*, *Elliot v. First Fed. Cmty. Bank of Bucyrus*, 821 Fed. Appx. 406, 414 (6th Cir. 2020).  The Court considers this TILA claim in its analysis.

1065 (11th Cir. 2004).

Here, Plaintiffs allege that Defendants "failed and refused to provide [] P[laintiffs] with a complete and accurate TILA disclosure statement, including, but not limited to: (1) a clear, conspicuous, and meaningful sequence the amount to be financed; (2) the amount of the finance charge; (3) the annual percentage rate; (4) the method of calculating the finance charges and the balance upon which a finance charge will be imposed; (5) total payments; (6) the number and amount of payments; and (7) the due dates or schedule of payments to pay the indebtedness," in violation of TILA.  (ECF No. 21 at ¶ 32.)  In particular, Plaintiffs argue that they present sufficient evidence to establish a claim of concealment under TILA.  (ECF No. 8 at 21.) Plaintiffs contend that Defendants concealed the following when negotiating the Refinance Loan: (1) the Refinance Loan was not a residential refinance loan, but a hard money, commercial loan; (2) the loan's interest rate of 11.99%; (3) the loan is amortized over forty years, but ultimately due within twenty-four months at the amount of $348,197.39.  (*Id.*)  Plaintiffs further state that they were not made aware that the loan contains a balloon payment late fee of $34,900 and that the monthly payment is $3,516.85.  (*Id.*)  Plaintiffs argue that they received only $10.45 at the close of escrow when they were promised $50,000 in cash.  (*Id.*)  Plaintiffs assert that they did not discover this information until three days after the close of escrow on the Refinance Loan.  (*Id.* at 21.)  Plaintiffs also contend that they did not know that broker fees in the amount of $27,855 had to be paid to Defendants Lexington and Funding Rush; that the default interest rate is 17.99%; that the prepayment penalty is $20,922.54; or that the loan was erroneously characterized as a "business loan." (*Id.*)  Plaintiffs argue that all that was concealed constitute prohibitions of TILA and RESPA.  (*Id.* at 22.)  Based on these allegations and the declarations submitted in support thereof, the Court finds that Plaintiffs will likely be able to establish that they did not timely receive the material disclosures according to TILA.  *See Igou*, 634 Fed. Appx. at 211.

In opposition, Defendants Richard Barnes, Katherine Heftman, and Silicon Private Capital, LLC argue that the loan at issue is a business purpose loan, not a residential consumer loan.  (ECF No. 18 at 2.)  Because it is a business purpose loan, Defendants argue that Plaintiffs are not entitled to the relief that they seek, urging the Court to find that this motion is "merely a

delay tactic on the foreclosure and to obtain leverage to negotiate a better deal." (*Id.*)  Contrary to Plaintiffs' allegations, Defendants contend that "Plaintiffs made the loan, understood the nature and terms of the loan, promised to repay the loan on those terms and defaulted by failing to make payments." (*Id.*)  In all, Defendants assert that Plaintiffs have neither met their burden of relief nor shown a likelihood of success on the merits, warranting denial of this motion. (*Id.* at 4.)

Plaintiffs' declarations submitted in support of their motion support the likelihood of success on Plaintiffs' TILA claims.  Upon review of the documents regarding the Refinance Loan Plaintiffs obtained, experienced real estate licensee and licensed real estate broker, Mr. Don Scordino, concluded that "Defendants intended to defraud [Plaintiffs], by treating the consumer, residential loan as a commercial loan to skirt the protections afforded to consumers when they borrow and use their primary residence as collateral." (ECF No. 9 at ¶ 15.)  Mr. Scordino asserts that Defendants engaged in predatory lending and fraudulently classified the Refinance Loan as a commercial loan, rather than a residential loan. (*Id.* at ¶ 17.)

Plaintiff Eric Ramos, the son of Plaintiffs Trinidad and Diana Ramos, alleges that Defendant Lexington represented to him that his parents may obtain a cash-out refinance loan, secured by their residence, for approximately $53,000. (ECF No. 12 at ¶ 5.)  Defendants requested that Eric sign various loan documents in late July 2022 and early August 2022, but Eric alleges that when he signed documents, including the mortgage loan disclosure statement and uniform refinance loan application, he did so without receiving a copy of such material documents or being advised or counseled on the ramifications of such documents. (*Id.* at ¶ 8.)  Rather, Eric did not receive a copy of the documents until the Refinance Loan closed on August 25, 2022, which was three days after the close of escrow. (*Id.* at ¶¶ 8, 11.)

Liberally construing Plaintiffs' claims, the Court finds that Plaintiffs' declarations may support a finding that Defendants failed to provide clear and conspicuous TILA disclosures and engaged in false and misleading disclosures, which both constitute TILA violations.  *See* 15 U.S.C. § 1632(a); *Smith*, 614 F.2d at 971; *Eby*, 495 F.2d at 650.

Furthermore, the Court also finds that Plaintiffs' declarations may also support a finding that they did not enter into a loan agreement for business purposes, but rather, that Plaintiffs

9

entered into the agreement for "personal, family, or household purposes."  15 U.S.C. § 1602(i).  Plaintiff Diana Ramos retired from Fresno Unified School District in 2017 and receives a monthly income of $1,696 whereas Plaintiff Trinidad Ramos' sole, monthly income was from social security, amounting to $1,968.  (ECF No. 14 at 2.)   By June 2022, Plaintiffs had medical bills amounting to $20,000, due to Plaintiff Trinidad Ramos's knee surgeries that partially forced him into retirement.  (*Id.* at 2-4.)  Plaintiff Trinidad and Diana Ramos's daughter was also in and out of the hospital with a terminal condition.  (*Id.* at 6.)

Around the same time, Plaintiffs received an unsolicited call from Defendant Lexington to inquire about the interest of refinancing Plaintiffs' mortgage on their residence.  (*Id.* at 4.)  Defendant Lexington represented to Plaintiffs that they could obtain an approximate $50,000 cash-out refinance loan if Plaintiffs agreed to add their son, Plaintiff Eric Ramos, to the loan application, and told them that they had to "act fast."  (*Id.* at 7.)  Plaintiffs intended to use the $50,000 cash to pay off their delinquent medical bills.  (*Id.* at 6.)  Due to finding Defendant Lexington trustworthy, where Defendant repeatedly represented to Plaintiffs that they were "in good hands," Plaintiffs signed several documents without the opportunity to review them or receive copies of them.  (*Id.* at 12.)  Among the terms of the Refinance Loan, it requires monthly payments of $3,516.85.  (ECF No. 15 at 5.)  In comparison to Plaintiffs' previous residential mortgage, which required monthly payments of only $1,690.20, Plaintiffs assert that they would not have agreed to such terms if they were properly disclosed.  (*Id.* at 4-5.)

Based on these allegations, the Court finds Defendants' opposition unavailing, and that Plaintiffs did not receive the required TILA disclosures from Defendants to put them on notice that it was a commercial or business loan.  Rather, the declarations support a finding that Plaintiffs likely received false and misleading disclosures from Defendants in the process of finalizing the loan. They reasonably relied on Defendants' representations to conclude that they were receiving a residential loan for the purpose of paying their medical bills. *See, e.g.*, *Smith*, 614 F.2d at 971; *McCollough*, 2014 WL 2547840, at *2.  The Court also infers that Defendants failed to adequately assess Plaintiffs' ability to repay the loan, considering Plaintiffs Diana and Trinidad Ramos's combined income totals to $3,664.00 and barely covers the Refinance Loan's

10

monthly payments.  *See* 15 U.S.C. § 1639c.  Therefore, the Court concludes that Plaintiffs has shown a likelihood of success on the merits of their TILA claims.

   2. <u>Irreparable Harm</u>

  Having found that Plaintiffs have shown a likelihood of success on the merits of their TILA claims, the Court now turns to the likelihood that Plaintiffs will suffer irreparable harm in the absence of the granting of preliminary injunctive relief.  The risk of irreparable harm must be "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131.  "Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

  Here, Plaintiffs assert that a risk of irreparable harm exists because if the foreclosure sale occurs, Plaintiffs and their granddaughter, "will be displaced and their home of 17 years taken away."  (ECF No. 8 at 17.)

  The loss of a home is a serious injury but does not necessarily constitute irreparable harm.  "'[W]hether a particular foreclosure constitutes irreparable harm turns in part on the reasons for the foreclosure.'" *Hester v. PHH Mort.*, No. 2:10-cv-01931-GEB-DAD, 2010 WL 2923495, at *4 (E.D. Cal July 26, 2010) (citing *Mandrigues v. World Sav., Inc.,* No. C 07–4497 JF (RS), 2009 WL 160213, at *3 (N.D.Cal.2009)) (internal citations omitted) (denying Plaintiffs' motion for temporary restraining order after finding that Plaintiffs did not "explain why they did not seek relief by motion for preliminary injunction at an earlier date.").  In *Alcaraz v. Wachovia Mortgage FSB,* No. CV F 08–1640 LJO, 2009 WL 30297, (E.D. Cal. Jan. 6, 2009), the court found that the imminent foreclosure of her home was not conclusively irreparable harm because the record "suggest[ed] that [plaintiff] sought a loan beyond her financial means and expectation of job loss." *Id.* at *4.

  Here, the reasons for Plaintiffs' foreclosure sufficiently support that Plaintiffs will suffer irreparable harm.  First, Plaintiffs sought injunctive relief from the Court within days of receiving notice of the impending foreclosure sale.  Notice of the foreclosure was recorded on June 20, 2023 and Plaintiffs and their counsel received notice on the same day.  (ECF No. 10 at 2.)  Plaintiffs filed a complaint in Fresno County Superior Court on June 20, 2023, and the matter was

set for an *ex parte* Application for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction in the superior court on July 6, 2023. (*Id.* at 2.) On July 5, before the hearing could occur, Defendants Lexington and Cheng removed the matter to this Court. (ECF No. 1.) Three days later, on July 8, 2023, Plaintiffs filed the instant motion for temporary injunctive relief. (ECF Nos. 6, 7.) Hence, Plaintiffs timely filed this motion and could not have sought relief by motion for injunctive relief at an earlier date, supporting that the upcoming foreclosure would result in irreparable harm.

In addition, the record indicates that Plaintiffs sought a loan within their financial means. According to Plaintiffs' claims, Plaintiffs sought a loan that would allow them to pay down medical debt, while Defendants represented that their monthly payments would be less than what Plaintiffs Diana and Trinidad Ramos had been paying on their previous mortgage loan. (ECF No. 12 at 3.) Accordingly, Plaintiffs did not seek a loan outside their financial means.

Therefore, the Court finds that Plaintiffs are likely to suffer immediate and irreparable harm in the absence of injunctive relief.

3. Balance of the Equities /Public Interest

Courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief," and "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. "In assessing whether the plaintiffs have met this burden, the district court has a duty to balance the interests of all parties and weigh the damage to each." *Stormans, Inc.*, 586 F.3d at 1138 (internal quotation marks and alteration omitted).

Here, Plaintiffs argue that that the balance of equities favors issuance of a temporary restraining order because Defendants have already received prepaid interest and over $27,000 in loan fees, and $6,800 in other fees that Plaintiffs have not received credit for. (ECF No. 8 at 23.) Plaintiffs argue that Defendants have suffered no harm as a result of the loan finance, and "even if Defendants show some harm from being enjoined," Plaintiffs' loss of their home and equity and the negative effect on their credit "outweigh[]" any harm experienced by Defendants. (*Id.*)

///

12

While not all Defendants opposed or filed an opposition to Plaintiffs' application for a TRO, Defendants that did oppose do not argue that they will face a hardship if this motion is granted, or the hardship they have faced as a result of Defendants' defaulting on the refinanced mortgage loan.  (*See* ECF No. 18.)  However, the Court notes Defendants may incur additional costs for preparing for an additional foreclosure if the Court grants Plaintiffs' motion.

Still, Defendants' hardship does not outweigh the hardship faced by Plaintiffs in the absence of injunctive relief.  The upcoming foreclosure sale with result in Plaintiffs losing their home, which is also the home to their granddaughter and niece.  Their potential eviction from their home and loss of the property is not something that can be compensated in damages.  *See, e.g*, *Hoggan v. Specialized Loan Servicing, LLC*, No. 221CV01862TLNCKD, 2021 WL 5180150, at *5 (E.D. Cal. Nov. 8, 2021).

In addition, the equities weigh in favor of Plaintiffs because they did not use dilatory tactics to bring this case. *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).  While it is not implausible that an application for injunctive relief may be used as a tactic to delay foreclosure, there is no indication here that Plaintiffs are using this to simply delay foreclosure proceedings. Rather, Plaintiffs have acted vigilantly on their rights.  *Contra Saba v. Caplan*, No. C 10-02113 SBA, 2010 WL 2681987, at *5 (N.D. Cal. July 6, 2010) (finding the balance of equities and public interest against Plaintiffs' favor because of "his ostensibly conscious decision to delay until the eve of the foreclosure sale to seek a TRO").  Rather, the removing Defendants did not respond to Plaintiffs' TRO motion, nor appeared at the hearing. For these reasons, the Court finds the balance of equities sufficiently tips in Plaintiffs' favor.

The Court also finds that injunctive relief supports the public interest.  "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists [s]ome critical public interest that would be injured by the grant of preliminary relief." *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1123 (E.D. Cal. Jul. 12, 2010).

The California Legislature enacted laws to protect the rights of homeowners in connection with the threats of foreclosure, including consumer protections for the loan modification process. *See* California Homeowners' Bill of Rights, codified at Cal. Civ. Code §§ 2920.5, 2923.4–.7,

13

2924, 2924.9–.12, 2924.15, 2924.17–.20.  "The public interest favors vindicating the Legislature's intent 'to have individual borrowers and lenders assess and explore alternatives to foreclosure.'" *Morris v. Residential Credit Sols., Inc.*, No. 2:14-CV-01460-TLN, 2015 WL 428114, at *10 (E.D. Cal. Feb. 2, 2015) (quoting *Magana v. Wells Fargo Bank, N.A.,* No. C 11–03993 CW, 2011 WL 4948674, at *2 (N.D.Cal. Oct.18, 2011) (internal citations omitted). The Court finds persuasive Plaintiffs' argument that they had other alternatives to the Refinance Loan, including "Chapter 7 bankruptcy liquidation," or not obtaining the loan at all and negotiating with their previous creditors. (ECF No. 9 at 6.)

Thus, the Court finds that both the balance of equities and public interest weigh in favor of granting Plaintiff's request of injunctive relief.

**C.   Bond Requirement**

Federal Rule of Civil Procedure 65(c) requires the party moving for a temporary restraining order to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Plaintiffs argue that a bond is not necessary because Plaintiffs have few assets left, and Defendants are already secured by Plaintiffs' residence, the only asset Plaintiffs possess.  (ECF No. 8 at 23-24.).  Defendant did not make any argument for bond in papers filed before the Court or in the hearing. (ECF No. 18 at 3.)

Accordingly, there is insufficient evidence that Defendants will suffer significant additional damages as a result of the temporary restraining order.  Therefore, the Court will not require Plaintiffs to post a bond at this time.  *See Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction.") (internal citation omitted).

## CONCLUSION

For the reasons stated above, Plaintiffs' motion for temporary restraining order, (ECF Nos. 6, 7), is granted pursuant to the terms below:

14

1. The Court orders that, pending a hearing on a motion for a preliminary injunction, Defendants Funding Rush, Inc., Andrew Adrian Dioli, Ralph Martinez, Jay Turner, Lennar Title, Inc., Lil' Wave Financial, Inc. dba Superior Loan Servicing, Lexington Mortgage Company dba Lexington, Spiros Cheng, Richard Barnes, Katherine Heftman, Silicon Private Capital, LLC, Bethany Dioli, individual and DOES 1-50, and their agents, servants, employees, and partners ("Defendants") and any person or entity acting in concert with them shall be restrained and enjoined from:

    a. Enforcing or acting upon the Notice of Default and Election to Sell Under Deed of Trust recorded in the Fresno County Recorder's Office on June 20, 2023, regarding real property commonly known as 5610 N. Hazel, Fresno, CA 93711 ("Subject Property");

    b. Engaging in or causing any act to dispossess Plaintiffs from the Subject Property;

    c. Engaging in or causing any act to obtain possession of the Subject Property;

    d. Commencing or otherwise initiating any other proceeding or act regarding Plaintiffs' interest in or possession of the Subject Property, until this action can be tried on the merits, or until further order by this Court.

2. No bond shall be required to be posted by Plaintiffs pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

3. This temporary restraining order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this order is extended (or Defendants consent that it should be extended) for a longer period of time;

4. Defendants are notified of their rights to apply to the Court for modification or dissolution of this temporary restraining order, if appropriate and supported by the showing of good cause, on two (2) days' notice or such shorter notice as the Court may allow. *See* Fed. R. Civ. P. 65(b)(4) and Local Rule 231(c)(8);

5. Defendants are advised that their failure to timely serve and file an opposition or

appear at a hearing on a motion for preliminary injunction, may result in the

imposition of a preliminary injunction against them pursuant to Rule 65 of the Federal

Rules of Civil Procedure.

IT IS SO ORDERED.

Dated:   July 11, 2023

_____

UNITED STATES DISTRICT JUDGE

16