UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD RAMOS, et al., | No. 1:23-cv-01016-ADA-HBK |
| Plaintiffs, | ORDER GRANTING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION |
| v. | |
| FUNDING RUSH, INC., et al., | (ECF Nos. 34, 35) |
| Defendants. | |

Before the Court is Plaintiffs Trinidad Ramos, Diana Ramos, and Eric L. Ramos's ("Plaintiffs") motion for preliminary injunction, filed on July 26, 2023, to enjoin the foreclosure sale of Plaintiffs' residence at 5610 N. Hazel, Fresno, CA 93711 ("Subject Property"), until a trial on the merits, or the case is otherwise resolved. (ECF Nos. 34, 35, 36, 37.)  The Court held a hearing on the matter on August 15, 2023, at 9:00a.m. (ECF No. 56.)  Brian K. Cuttone appeared on behalf of Plaintiffs.  Edward T. Weber appeared on behalf of Defendants Richard Barns, Katherine Heftman, and Silicon Private Capital, LLC.  Benjamin T. Nicholson appeared on behalf of Defendant Lennar Title, Inc.  For the reasons stated below, the Court grants Plaintiffs' motion for preliminary injunction.

**PROCEDURAL HISTORY**

On June 20, 2023, Plaintiffs, proceeding with counsel, filed the complaint in this action in Fresno County Superior Court against Defendants Funding Rush, Inc. ("Funding Rush"), Andrew

1

1 Adrian Dioli, Ralph Martinez, Jay Turner, Lennar Title, Inc. ("Lennar Title"), Lil' Wave
2 Financial, Inc., Superior Loan Servicing, Lexington Mortgage Company ("Lexington"), Spiros
3 Cheng, Richard Barns[1], Katherine Heftman, Silicon Private Capital, Bethany Dioli, and
4 unidentified Does 1-50 (collectively, "Defendants"). (*See* ECF No. 1). Defendants Lexington
5 Mortgage Company and Spiros Cheng properly removed the matter to this Court on July 5, 2023.
6 (ECF No. 1 at 1-3.)

7 On July 8, 2023, Plaintiffs filed a Motion for a Temporary Restraining Order ("TRO") "to
8 stop the foreclosure of [] Plaintiffs['] personal residence, which is set for [a] trustee's sale on July
9 13, 2023." (ECF No. 8 at 6.)[2] The Court held a hearing on this matter on July 11, 2023. (ECF
10 No. 28.) The Court issued an order granting Plaintiffs' Motion for a Temporary Restraining
11 Order. (ECF No. 29.)

12 Plaintiffs filed their motion for preliminary injunction on July 26, 2023, to enjoin the
13 Subject Property's foreclosure sale, until a trial on the merits, or the case is otherwise resolved.
14 (ECF Nos. 34, 35, 36, 37.) On August 1, 2023, Defendant Lennar Title filed an opposition. (ECF
15 No. 43.) On August 2, 2023, Defendant Silicon Private Capital, LLC filed a statement of non-
16 opposition and Defendants Richard Barns and Katherine Heftman filed a collective opposition.
17 (ECF Nos. 44, 45.) On August 10, 2023, Plaintiffs filed their reply. (ECF No. 52.)

## FACTUAL BACKGROUND

19 The following facts derive from Plaintiffs' Motion for Temporary Restraining Order and
20 Complaint. (ECF Nos. 1, 8.) Plaintiffs Trinidad, Diana, and Eric Ramos[3] live at 5610 North
21 Hazel Avenue, Fresno, California or the Subject Property. (ECF No. 7 at 2.) This is their
22 primary residence, having resided there since 2006. (*Id.*) Plaintiffs are all parties to the
23 refinanced mortgage loan ("Refinance Loan") on the residence. Plaintiff Trinidad is 67-years old

---

[1] In his papers, Defendant Richard Barns refers to himself as "Richard Barnes." (ECF No. 45.) For the purposes of this order, the Court will refer to the party as Defendant Richard Barns, as listed on the docket, instead of "Richard Barnes."
[2] The Court references to the page numbers assigned by the ECF filing system at the top of the page when these papers were filed.
[3] The Court will refer to Plaintiffs by their first names for ease of reference as they all share the last name Ramos.

2

1  and retired. (*Id.*) Plaintiff Diana is 63-years old and retired. (*Id.*) Plaintiff Eric is 26-years old
2  and the son of Trinidad and Diana. (*Id.*) Plaintiffs Trinidad and Diana's granddaughter, Arianna,
3  also resides at the Subject Property. (*Id.* at 2.) Arianna's mother is Plaintiffs Trinidad and
4  Diana's daughter who passed away in Fall 2022 due to kidney failure resulting from her Lupus
5  diagnosis. (*Id.* at 3.)

6      In June 2022, Plaintiff Trinidad received an unsolicited call from Defendant Ralph
7  Martinez, an alleged employee of Defendant Lexington and agent of Defendant Funding Rush.
8  (ECF No. 7 at 3.) Plaintiffs allege that Defendant Martinez called Plaintiff Trinidad to ask if he
9  was interested in refinancing the mortgage on his residence. (*Id.*; ECF No. 1 at 17.) At the time,
10 Plaintiffs Trinidad and Diana had roughly $20,000 in medical debt, and Plaintiff Trinidad
11 expressed to Defendant Martinez that he would be interested in refinancing if he could get enough
12 money to pay the $20,000. (ECF No. 1 at 16.)

13     Plaintiffs then began the process of refinancing their mortgage. (ECF No. 1 at 16.) During
14 the process, Defendant Martinez made numerous intentional misrepresentations and concealed
15 information from Plaintiffs to force them to refinance their mortgage. (*Id.* at 20.) Specifically,
16 Defendant Martinez told Plaintiffs Trinidad and Diana that the Refinance Loan would allow them
17 to cash out from the equity associated with the Subject Property and receive $50,000 at the close
18 of escrow to pay off their medical debt. (*Id.* at 18.) He also represented their new mortgage
19 payment would be less than the amount that they were paying on their present mortgage. (*Id.*)
20 Upon this information, Plaintiffs sent Defendants Martinez, Turner, and Lexington their current
21 bills and payments. (*Id.*) These Defendants then informed Plaintiffs Diana and Trinidad that if
22 their son, Plaintiff Eric, was added to the Refinance Loan, "they were confident that [Plaintiffs
23 would get] approximately $50,000 through a cash-out refinance." (*Id.* at 19.)

24     Defendants prepared a Mortgage Loan Disclosure Statement but failed to provide
25 Plaintiffs a copy of the statement and failed to counsel them regarding the ramifications of the
26 disclosure or of entering into the Refinance Loan. (ECF No. 1 at 19-20.) Plaintiffs then
27 electronically signed a Refinance Loan Application and Residential Loan Application. (*Id.* at 20-
28 21.) Plaintiffs did not receive the documents, including the Mortgage Loan Disclosure Statement,

1  to review until after the loan was closed. (*Id.* at 20.)

2  Once Plaintiffs ultimately received the Final Closing Statement and other loan documents, they learned that the Refinance Loan was different from what they had been told. (ECF No. 7 at 6.; ECF No. 1 at 24.) They learned the following conditions of their loan: (1) their new interest rate was 11.99%; (2) amortized over forty years, but due within 24 months in the amount of $348,197.39; (3) that included a late payment fee of $34,900; (4) a monthly payment at $3,516.85; (5) a receipt of $10.45 in cash; (6) broker fees to Defendants Lexington and Funding Rush of $27,855; (7) a default interest rate of 17.99%; and (8) a prepayment penalty of $20,922.54. (ECF No. 8 at 7-8.) Further, the loan was characterized as a business loan and recourse loan that allows lenders to seek a deficiency judgment against Plaintiffs after foreclosure. (*Id.*) Plaintiffs made four monthly payments under the Refinance Loan in the amount of $1,700 per month but stopped making payments after they learned that the financial management company was not crediting them for their payments. (ECF No. 7 at 8.)

On February 10, 2022, Defendants recorded a Notice of Default. (*Id.*) On June 20, 2023, Defendants recorded a Notice of Trustee's sale, which was scheduled for July 13, 2023. (*Id*. at 8-9.) Upon receiving this notice, Plaintiffs filed the Motion for Temporary Restraining Order to stop the foreclosure of their personal residence which the Court granted on July 12, 2023. (ECF Nos. 6 and 24.) On July 26, 2023, Plaintiffs filed the present Motion for Preliminary Injunction. (ECF No. 34.)

## LEGAL STANDARD

"The proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see also Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011) ("After *Winter*, 'plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.'") (quoting *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)). An "injunction is

4

appropriate when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for Wild Rockies*, 632 F.3d at 1134-35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008) (*en banc*), *overruled on other grounds by Winter*, 555 U.S. 7).[4] The party seeking the injunction bears the burden of proof as to each of these elements. *Klein v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."). Finally, an injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## ANALYSIS

**A.     Rule 65 Notice**

Federal Rule of Civil Procedure 65 provides that "[t]he court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Here, Plaintiffs submitted the proofs of service to all Defendants on July 26, 2023. (ECF No. 38.) Therein, Plaintiffs served the notice of motion and motion for preliminary injunction, the memorandum of points and authorities in support of motion for preliminary injunction, the declaration of John Shore in support of motion for preliminary injunction, and the declaration of Ryan Jones in support of motion for preliminary injunction. (*Id.* at 2.) Plaintiffs served Brent R. Phillips, Jay Turner, Funding Rush, Inc., Andrew Dioli, Bethany Dioli, Paul Sherman, Scott Reddie, and Edward T. Weber via e-mail or electronic transmission a copy of the aforementioned documents. (*Id.* at 3.) Therefore, the Court finds that there is proper notice of this motion. As such, the Court turns to whether it may grant Plaintiffs' requested injunctive relief.

---

[4] The Ninth Circuit has found that the "serious question" version of the circuit's sliding scale approach survives "when applied as part of the four-element *Winter* test." *All. for the Wild Rockies*, 632 F.3d at 1134. "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135.

**B.      Whether a Temporary Restraining Order is Appropriate**

       1.      <u>Likelihood of Success on the Merits</u>

In their motion, Plaintiffs contend that they are likely to succeed on the merits of two causes of action asserted in their complaint, particularly their misrepresentation of material facts claim under California Civil Code § 1701(1), Trust in Lending Act ("TILA"), and Real Estate Settlement Procedures Act ("RESPA"), and concealment of and failure to disclose material facts under California Civil Code § 1710(3), TILA, and RESPA. (ECF No. 35 at 10-15.) As explained below, the Court finds that Plaintiffs have shown a likelihood of success on their TILA claims sufficient to warrant injunctive relief. The Court will not address Plaintiffs' likelihood of success on the merits regarding their other claims.

According to TILA, creditors[5] must clearly and accurately disclose the terms of a loan, including financial charges, interest rates, and the borrower's rights. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). To state a claim alleging a TILA violation, a plaintiff must allege specific facts showing that either: (1) the plaintiff did not receive a required disclosure; or (2) the plaintiff received disclosures that were not clear and conspicuous. *See Igou v. Bank of Am., N.A.*, 634 Fed. Appx. 208, 211 (10th Cir. 2015) ("[C]ourts across the country have emphasized that plaintiffs must provide basic details to support TILA claims or those claims will be dismissed . . . ." (citations omitted)); *Thompson v. HSBC Bank USA, N.A.*, 850 F. Supp. 2d 269, 276 (D.D.C. 2012) ("To state a claim under TILA, a 'plaintiff must show either that she did not receive the required disclosures or that the disclosures provided were not clear and conspicuous."). Material terms of a consumer credit transaction include the following: (1) the

---

[5] A "creditor" under TILA is a person who: (1) regularly extends consumer credit; and (2) is the party to which the debt arising from the consumer credit transaction is initially payable. 15 U.S.C. § 1602(g). Here, Plaintiffs allege that Defendants engaged in predatory lending, which is "a range of abusive and aggressive lending practices, including deception or fraud, charging excessive fees and interest rates, making loans without regard to a borrower's ability to pay . . . ." *Am. Fin. Servs. Assn. v. City of Oakland*, 34 Cal. 4th 1239, 1244 (2005). Plaintiffs allege that Defendants, collectively, failed and refused to provide Plaintiffs with a complete and accurate TILA disclosure statement when they serviced the Refinance Loan to Plaintiffs. (*See* ECF No. 35 at 10.) The Court finds that Plaintiffs sufficiently allege that Defendants are creditors as it may be inferred that they regularly extend consumer credit and are parties to which the debt arising from the alleged consumer credit transaction is initially payable.

1   annual percentage rate of interest; (2) the finance charge; (3) the amount financed; (4) the total
2   number of payments; and (5) the total sale price, which is the sum of the cash price of the
3   property or services, any additional charges, and the finance charge. 15 U.S.C. § 1638; *Beach*,
4   523 U.S. at 412. A plaintiff may also assert that a defendant included a prepayment penalty (in
5   certain mortgages), imposed balloon penalties, or failed to adequately assess a consumer's ability
6   to repay the mortgage.[6] *See* 15 U.S.C. § 1639c. Failure to satisfy TILA subjects a lender to
7   criminal penalties for noncompliance and to statutory and actual damages traceable to a lender's
8   failure to make the requisite disclosures. *Id.*

9   To be clear and conspicuous, the disclosures, such as the annual percentage rate and
10  finance charge, must appear more prominent than other information in connection with a
11  transaction, based on an objective reasonable person approach. 15 U.S.C. § 1632(a); *see Rivera*
12  *v. Grossinger Autoplex, Inc.*, 274 F.3d 1118, 1122 (7th Cir. 2001). For alleged false and
13  misleading disclosures, courts apply an objective standard to determine if a disclosure violated
14  TILA requirements. *See, e.g.*, *Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980); *McCollough*
15  *v. Insight Capital, LLC*, No. 2:13-cv-1551-VEH, 2014 WL 2547840, at *2 (N.D. Ala. June 5,
16  2014). Overall, courts construe TILA claims liberally in favor of the consumer. *See Eby v. Reb*
17  *Realty, Inc.*, 495 F.2d 646, 650 (9th Cir. 1974); *see also Curtis v. Propel Prop. Tax Funding,*
18  *LLC*, 915 F.3d 234, 239 (4th Cir. 2019); *Bragg v. Bill Heard Chevrolet, Inc.*, 374 F.3d 1060,
19  1065 (11th Cir. 2004).

20  Here, Plaintiffs allege that Defendants failed and refused to provide Plaintiffs with a
21  complete and accurate TILA disclosure statement, including, but not limited to: (1) a clear,
22  conspicuous, and meaningful sequence the amount to be financed; (2) the amount of the finance

---

[6] According to 15 U.S.C. § 1639c, concerning the minimum standards for residential mortgage loans, "no creditor may make a residential mortgage loan unless the creditor makes a reasonable and good faith determination based on verified and documented information that, at the time the loan is consummated, the consumer has a reasonable ability to repay the loan." *Id.* at § 1639c(a)(1). "A determination under this subsection of a consumer's ability to repay a residential mortgage loan shall include consideration of the consumer's credit history, current income," and more. *Id.* at § 1639c(a)(3). Courts have held that creditors violated TILA by failing to verify homeowner's income. *See, e.g.*, *Elliot v. First Fed. Cmty. Bank of Bucyrus*, 821 Fed. Appx. 406, 414 (6th Cir. 2020). The Court considers this TILA claim in its analysis.

charge; (3) the annual percentage rate; (4) the method of calculating the finance charges and the balance upon which a finance charge will be imposed; (5) total payments; (6) the number and amount of payments; and (7) the due dates or schedule of payments to pay the indebtedness in violation of TILA. (ECF No. 35 at 13.) While negotiating the Refinance Loan, Plaintiffs contend that Defendants concealed the following: (1) the Refinance Loan was not a residential refinance loan, but a hard money, commercial loan; (2) the loan's interest rate of 11.99%; (3) the loan is amortized over forty years, but ultimately due within twenty-four months in the amount of $348,197.39. (*Id.* at 14.) Plaintiffs further state that they were not made aware that the loan contains a balloon payment late fee of $34,900 and that the monthly payment is $3,516.85. (*Id.*) Plaintiffs argue that they received only $10.45 at the close of escrow when they were promised $50,000 in cash. (*Id.*) Plaintiffs assert that they did not discover this information until three days after the close of escrow on the Refinance Loan. (*Id.* at 10.) Plaintiffs also contend that they did not know that broker fees in the amount of $27,855 had to be paid to Defendants Lexington and Funding Rush; that the default interest rate is 17.99%; that the prepayment penalty is $20,922.54; or that the loan was erroneously characterized as a "business loan." (*Id.* at 12.) Based on these allegations and the declarations submitted in support thereof, the Court finds that Plaintiffs will likely be able to establish that they did not timely receive the material disclosures according to TILA. *See Igou*, 634 Fed. Appx. at 211.

In opposition, Defendants Richard Barns and Katherine Heftman argue that Plaintiffs are estopped from changing the terms and characterization of the Refinance Loan. (ECF No. 45 at 6.)[7]  Defendants argue that the loan was a business purpose loan, not an owner-occupied residential consumer loan. (*Id.* at 2.)

---

[7] In reply, Plaintiffs argue that Defendant Richard Barn's declaration consists of contradictory statements that makes it unreliable. (ECF No. 52 at 4-8.) Plaintiffs argue that Defendants' fractionalized interest in the deed of trust is considered a security pursuant to section 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), relying on *Securities & Exchange Commission v. Federal Shopping Way, Inc.*, 433 F.2d 148 (9th Cir. 1970). (*Id.* at 5.) Because it is a security, Plaintiffs argue that Defendants must be accredited investors who are likely to not be substantially harmed for Plaintiffs' failure to make loan payments. (*Id.*) The Court is not persuaded that Defendants Barns and Heftman are accredited investors because Plaintiffs fail to provide sufficient evidence to prove such allegation.

In order to establish equitable estoppel four elements must be present: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." *McGlynn v. State of Cal.*, 21 Cal. App. 5th 548, 561 (2018) (internal quotations omitted). Defendants argue that Plaintiffs signed the documents that contain their misrepresentations, including information they arguably used to induce the lender to rely to issue the Refinance Loan. (ECF No. 45 at 6.) Defendants further assert that Plaintiffs knew they expressed false representations, and Defendants did not know of them. (*Id.*) Defendants conclude that they will likely suffer harm because of their inability to pay their own bills due to Plaintiffs' failure to make payments on the loan. (*Id.*)

Defendants attach Exhibit 6, which is a "copy of a supposed Lease from a supposed tenant in the property who was supposedly living there and paying rent to Plaintiffs. Apparently, this was all false and was made to look like the property was rented and being used for business, in order to induce the Defendants to make the loan." (ECF No. 45 at 3.) In reply, Plaintiffs argue that Defendants' Exhibit 6 is a fraudulent document, manufactured during this action. (ECF No. 52 at 3.) Plaintiffs note the deficiencies in the lease, including an addendum relevant to only San Francisco buildings, whereas the Subject Property is in Fresno. (*Id.*) In addition to the contradictory addendum, on the first page of the lease, it states that it was made and entered on July 27, 2022, but the document appears to have been signed by Trinidad Ramos and Corina Fernandez on April 29, 2020. (ECF No. 45-6 at 1, 10.) Plaintiffs argue that they had never seen the lease before, supporting the false nature of the document. (*Id.*) Due to the inconsistencies throughout the lease agreement, the Court finds that Defendants fail to demonstrate that Plaintiffs made false representations to secure the Refinance Loan and that Plaintiffs can be equitably estopped from asserting their claims.

Secondly, Defendants argue that even if Plaintiffs were unaware of what documents they were signing, or claim that they did not read the documents, Plaintiffs are nonetheless bound to the contract. (ECF No. 45 at 7.) Defendants rely on *N.A.M.E.S. v. Singer*, 90 Cal. App. 3d 653

(1979), holding that "a party is bound by provisions in an agreement which he signs, even though he has not read them and signs unaware of their existence." *Id.* at 656. *Singer* involves a written agreement with an arbitration clause, where the plaintiff agreed to perform certain repair work and painting on the defendant's property. *Id.* Defendants also cite to *George v. Bekins Van & Storage Co.*, 33 Cal. 2d 834 (1949), which involved a receipt for the defendant's goods purchased by the plaintiffs. *Id.* at 848. The court in *George* ultimately held that the value of the goods was clearly stated on the face of the receipt, and that the receipt was not designed in any way to conceal its nature, using a bold-face type font to list the prices. *Id.* These cases are factually distinguishable from this action, which involves the Subject Property and the Refinance Loan. The Refinance Loan is largely dissimilar from a service contract and a receipt of goods, considering the protections codified to protect consumers of residential loans. *See* 15 U.S.C. § 1601(a); *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 197 (2011); *Abels v. Bank of Am., N.A.*, No. 11-CV-208 YGR, 2012 WL 691790, at *9 (N.D. Cal. Mar. 2, 2012) (addressing the abusive practices in home mortgage lending).

Attached to the motion for preliminary injunction, Plaintiffs submit additional declarations.[8] (ECF Nos. 36, 37.) John W. Shore is the Executive Director of the Community

---

[8] Plaintiffs' declarations submitted in support of their Motion for a Temporary Restraining Order supported the likelihood of success on Plaintiffs' TILA claims. (*See* ECF Nos. 9, 12.) Upon review of the documents regarding the Refinance Loan Plaintiffs obtained, experienced real estate licensee and licensed real estate broker, Mr. Don Scordino, concluded that "Defendants intended to defraud [Plaintiffs], by treating the consumer, residential loan as a commercial loan to skirt the protections afforded to consumers when they borrow and use their primary residence as collateral." (ECF No. 9 at ¶ 15.) Mr. Scordino asserts that Defendants engaged in predatory lending and fraudulently classified the Refinance Loan as a commercial loan, rather than a residential loan. (*Id.* at ¶ 17.)

Plaintiff Eric Ramos, the son of Plaintiffs Trinidad and Diana, alleges that Defendant Lexington represented to him that his parents may obtain a cash-out refinance loan, secured by their residence, for approximately $53,000. (ECF No. 12 at ¶ 5.) Defendants requested that Eric sign various loan documents in late July 2022 and early August 2022, but Eric alleges that when he signed documents, including the mortgage loan disclosure statement and uniform refinance loan application, he did so without receiving a copy of such material documents or being advised or counseled on the ramifications of such documents. (*Id.* at ¶ 8.) Rather, Eric did not receive a copy of the documents until the Refinance Loan closed on August 25, 2022, which was three days after the close of escrow. (*Id.* at ¶¶ 8, 11.)

Housing Council and concurrently serves as a broker for the Council's real estate and mortgage lending division, utilizing over thirty years of experience in real estate lending and sales. (ECF No. 37 at ¶¶ 2-5.) Upon review of Plaintiffs' paperwork, Mr. Shore concluded that the Refinance Loan is a predatory loan because it provides no benefit to Plaintiffs and enriches only the loan brokers and lenders. (*Id.* at ¶ 7.) Mr. Shore further finds that Plaintiffs received the Final Settlement Statement as the only disclosure, which occurred three days after the close of escrow. (*Id.* at ¶ 19.)

Liberally construing Plaintiffs' claims, the Court finds that Plaintiffs' declarations may support a finding that Defendants failed to provide clear and conspicuous TILA disclosures and engaged in false and misleading disclosures, which both constitute TILA violations. *See* 15 U.S.C. § 1632(a); *Smith*, 614 F.2d at 971; *Eby*, 495 F.2d at 650. Notably, Defendants Lexington and Funding Rush have not filed oppositions or declarations to dispute the claims Plaintiffs asserted in their motion. (ECF No. 52 at 3.) The lack of opposition from the remaining Defendants, although served with the notice of motion and accompanying papers, supports the Court's decision to grant preliminary injunctive relief to Plaintiffs. (*See* ECF No. 30 ("Failure to timely file an opposition or statement of non-opposition as required by Local Rule 230 to Plaintiffs' Motion for Preliminary injunction shall be construed as a concession or non-opposition to the motion for preliminary injunction. See L.R. 230(c).").)

Furthermore, the Court also finds that Plaintiffs' declarations may also support a finding that they did not enter into a loan agreement for business purposes, but rather, that Plaintiffs entered into the agreement for "personal, family, or household purposes." 15 U.S.C. § 1602(i). Plaintiff Diana retired from Fresno Unified School District in 2017 and receives a monthly income of $1,696. (ECF No. 14 at 2.) Plaintiff Trinidad's sole, monthly, income is from social security amounting to $1,968. (*Id.*) By June 2022, Plaintiffs had medical bills amounting to $20,000, due, in part, to Plaintiff Trinidad's knee surgeries that partially forced him into retirement and Trinidad and Diana's daughter's medical bills as a result of her hospital stays due to her terminal condition. (*Id.* at 2, 4, and 6.)

Around the same time, Plaintiffs received an unsolicited call from Defendant Lexington to

inquire about the interest of refinancing Plaintiffs' mortgage on their residence. (*Id.* at 4.) Defendant Lexington represented to Plaintiffs that they could obtain an approximate $50,000 cash-out refinance loan if Plaintiffs agreed to add their son, Plaintiff Eric Ramos, to the loan application, and told them that they had to "act fast." (*Id.* at 7.) Plaintiffs intended to use the $50,000 cash to pay off their delinquent medical bills. (*Id.* at 6.) After finding Defendant Lexington trustworthy, where Defendant repeatedly represented to Plaintiffs that they were "in good hands," Plaintiffs signed several documents without the opportunity to review them or receive copies of them. (*Id.* at 12.) The Refinance Loan requires monthly payments of $3,516.85. (ECF No. 15 at 5.) In comparison, Plaintiffs' previous residential monthly mortgages payments were $1,690.20. (*Id.* at 4-5.) Plaintiffs assert that they would not have agreed to such terms if they were properly disclosed. (*Id.*)

Based on these allegations, the Court finds Defendants' position unavailing, and that Plaintiffs will likely be able to show that they did not receive the required TILA disclosures from Defendants to put them on notice that they were entering into a commercial or business loan. Further, the motion supports a finding that Plaintiffs will likely succeed in demonstrating that they received false and misleading disclosures from Defendants in the process of finalizing the loan and that they reasonably relied upon Defendants' representations to conclude that they were receiving a residential loan for the purpose of paying their medical bills. *See, e.g.*, *Smith*, 614 F.2d at 971; *McCollough*, 2014 WL 2547840, at *2. The Court also infers that Defendants failed to adequately assess Plaintiffs' ability to repay the loan, considering Plaintiffs Diana and Trinidad's combined income was barely sufficient to pay the Refinance Loan's monthly payments. *See* 15 U.S.C. § 1639c. Therefore, the Court concludes that Plaintiffs have shown a likelihood of success on the merits of their TILA claims.

    2.    <u>Irreparable Harm</u>

Having found that Plaintiffs have shown a likelihood of success on the merits of their TILA claims, the Court now turns to the likelihood that Plaintiffs will suffer irreparable harm in the absence of preliminary injunctive relief. The risk of irreparable harm must be "likely, not just possible." *All. for the Wild Rockies*, 632 F.3d at 1131. "Speculative injury does not constitute

irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

In their motion, Plaintiffs argue that they will suffer irreparable harm, absent a preliminary injunction. (ECF No. 35 at 9.) Plaintiffs explain that if their home is foreclosed upon, an elderly couple, living with their son and their granddaughter who is the daughter of their deceased daughter, will be displaced from their home of seventeen years. (*Id.*) Plaintiffs further note that Defendants unlawfully took $222,600 of Plaintiffs' equity. (*Id.*)

The loss of a home is a serious injury but does not necessarily constitute irreparable harm. "'[W]hether a particular foreclosure constitutes irreparable harm turns in part on the reasons for the foreclosure.'" *Hester v. PHH Mort.*, No. 2:10-cv-01931-GEB-DAD, 2010 WL 2923495, at *4 (E.D. Cal July 26, 2010) (citing *Mandrigues v. World Sav., Inc.,* No. C 07–4497 JF (RS), 2009 WL 160213, at *3 (N.D.Cal.2009)) (internal citations omitted) (denying Plaintiffs' motion for temporary restraining order after finding that Plaintiffs did not "explain why they did not seek relief by motion for preliminary injunction at an earlier date"). In *Alcaraz v. Wachovia Mortgage FSB,* No. CV F 08–1640 LJO, 2009 WL 30297, (E.D. Cal. Jan. 6, 2009), the court found that the imminent foreclosure of her home was not conclusively irreparable harm because the record "suggest[ed] that [plaintiff] sought a loan beyond her financial means and expectation of job loss." *Id.* at *4.

Unlike in the cases cited above, here, the Plaintiffs have demonstrated both that they have not been dilatory in requesting this injunctive relief and that they did not seek a loan beyond their means. First, as explained in the Procedural History section above, Plaintiff sought injunctive relief from the Court within days of receiving notice of the impending foreclosure sale. Notice of the foreclosure was recorded on June 20, 2023, and Plaintiffs received notice on the same day. (ECF No. 10 at 2.) Plaintiffs filed a complaint in Fresno County Superior Court on June 20, 2023, and the matter was set for a hearing on an *ex parte* Application for Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction on July 6, 2023. (*Id.*) On July 5, 2023, Defendants Lexington and Cheng removed the matter to this Court. (ECF No. 1.) Three days later, on July 8, 2023, Plaintiffs filed a Motion seeking a Temporary Restraining

1  Order. (ECF Nos. 6, 7.) Hence, Plaintiffs timely filed their motion and could not have sought
2  relief by motion for injunctive relief at an earlier date, supporting that a foreclosure would result
3  in irreparable harm.
4      In addition, the record is replete with declarations that Plaintiffs sought a loan within their
5  financial means in that they wanted to take advantage of their home's equity to pay down medical
6  debt. (ECF No. 12 at 3.) They additionally note that Defendants represented to Plaintiffs that
7  their monthly payments would be less than what Plaintiffs had been paying on their previous
8  mortgage loan. (*Id*.) Accordingly, Plaintiffs did not seek a loan outside of their financial means.
9      Therefore, the Court finds that Plaintiffs are likely to suffer immediate and irreparable
10 harm in the absence of injunctive relief.
11     3. <u>Balance of the Equities /Public Interest</u>
12     Courts "must balance the competing claims of injury and must consider the effect on each
13 party of the granting or withholding of the requested relief," and "should pay particular regard for
14 the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S.
15 at 24. "In assessing whether the plaintiffs have met this burden, the district court has a duty to
16 balance the interests of all parties and weigh the damage to each." *Stormans, Inc.*, 586 F.3d at
17 1138 (internal quotation marks and alteration omitted).
18     Here, Plaintiffs argue that the balance of equities favors issuance of a preliminary
19 injunction because Defendants have already received prepaid interest and over $27,000 in loan
20 fees. (ECF No. 35 at 16.) Plaintiffs paid $6,800 in fees to Defendants, which Defendants have
21 refused to return to Plaintiffs or credit as loan payments. (*Id.*) Plaintiffs argue that Defendants
22 have suffered no harm because of the Refinance Loan, and "even if Defendants show some harm
23 from being enjoined," Plaintiffs' loss of their home and equity and the negative effect on their
24 credit outweigh any harm Defendants experienced. (*Id.*) On the other hand, Defendants Richard
25 Barns argues that he may be substantially harmed if he does not receive Plaintiffs' loan payments
26 or foreclose on Plaintiffs' property. (ECF No. 45 at 8.) Defendant Barns asserts that he relies on
27 the payments to pay bills and living expenses, as they loaned their retirement money. (*Id.*)
28     As the Court found in the order granting Plaintiffs' Motion for a Temporary Restraining

1    Order, Defendants' hardship does not outweigh Plaintiffs' hardship in the absence of injunctive
2    relief.  Although Defendants allege that they are unable to pay their bills unless the foreclosure
3    moves forward, such hardship only arose once Plaintiffs filed a motion for preliminary injunction
4    and was not mentioned in their opposition to the motion for temporary injunctive relief.  (*See*
5    ECF Nos. 18, 45.)  In his declaration, Defendant Barns states that he has "been making loans for a
6    number of years," and the Court infers that due to Defendant Barns's history of lending, it is
7    unlikely that he would suffer harm because of a delayed foreclosure.  (ECF No. 45 at 11.)  The
8    upcoming foreclosure sale will result in Plaintiffs losing their home, which is also the home to
9    their granddaughter and niece.  Their potential eviction from their home and loss of the property
10   is not something that can be compensated in damages.  *See, e.g*, *Hoggan v. Specialized Loan*
11   *Servicing, LLC*, No. 221CV01862TLNCKD, 2021 WL 5180150, at *5 (E.D. Cal. Nov. 8, 2021).

12          In addition, the equities weigh in favor of Plaintiffs because they did not use dilatory
13   tactics to bring this case.  *See Rhines v. Weber*, 544 U.S. 269, 278 (2005).  While it is not
14   implausible that an application for injunctive relief may be used as a tactic to delay foreclosure,
15   there is no indication here that Plaintiffs filed this motion to simply delay foreclosure
16   proceedings.  Rather, Plaintiffs vigilantly acted on their rights.  *Contra Saba v. Caplan*, No. C 10-
17   02113 SBA, 2010 WL 2681987, at *5 (N.D. Cal. July 6, 2010) (finding the balance of equities
18   and public interest against Plaintiffs' favor because of "his ostensibly conscious decision to delay
19   until the eve of the foreclosure sale to seek a TRO").  Rather, the removing Defendants neither
20   responded to either Plaintiffs' TRO motion or motion for preliminary injunction, nor appeared at
21   either hearing.  For these reasons, the Court finds that the balance of equities sufficiently tips in
22   Plaintiffs' favor.

23          The Court also finds that injunctive relief supports the public interest.  "The public interest
24   analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there
25   exists [s]ome critical public interest that would be injured by the grant of preliminary relief."
26   *Credit Bureau Connection, Inc. v. Pardini*, 726 F. Supp. 2d 1107, 1123 (E.D. Cal. July 12, 2010).

27          The California Legislature enacted laws to protect homeowner rights in connection with
28   the threats of foreclosure, including consumer protections for the loan modification process.  *See*

California Homeowners' Bill of Rights, codified at Cal. Civ. Code §§ 2920.5, 2923.4–7, 2924, 2924.9–12, 2924.15, 2924.17–20.  "The public interest favors vindicating the Legislature's intent 'to have individual borrowers and lenders assess and explore alternatives to foreclosure.'" *Morris v. Residential Credit Sols., Inc.*, No. 2:14-CV-01460-TLN, 2015 WL 428114, at *10 (E.D. Cal. Feb. 2, 2015) (quoting *Magana v. Wells Fargo Bank, N.A.,* No. C 11–03993 CW, 2011 WL 4948674, at *2 (N.D. Cal. Oct.18, 2011) (internal citations omitted).  The Court finds persuasive Plaintiffs' previous argument made in their motion for temporary injunctive relief that they had other alternatives to the Refinance Loan, including "Chapter 7 bankruptcy liquidation," or not obtaining the loan at all and negotiating with their previous creditors.  (ECF No. 9 at 6.)  Thus, the Court finds that both the balance of equities and public interest weigh in favor of granting Plaintiff's request of injunctive relief.

**C.     Bond Requirement**

Federal Rule of Civil Procedure 65(c) requires the party moving for a preliminary injunction to "give[] security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The question whether and in what amount security should be posted is a matter left to this Court's discretion.  *See Wash. Capitols Basketball Club, Inc. v. Barry*, 304 F. Supp. 1193, 1203 (N.D. Cal. 1969), affirmed, 419 F.2d 472 (9th Cir. 1969).  A strong likelihood of success on the merits similarly negates the need for security.  *See Scherr v. Volpe*, 466 F.2d 1027, 1035 (7th Cir. 1972).

Plaintiffs argue that Defendants are adequately protected and only a nominal bond, if any, should be required.  (ECF No. 35 at 16-19.)  Plaintiffs argue that due to their impecunious nature, preliminary injunctive relief should be granted without any security.  *See Orantes-Hernandez v. Smith*, 541 F.Supp. 351, 385 n.42 (C.D. Cal. 1982).  Furthermore, Plaintiffs contend that ordering more than a nominal bond would effectively preclude Plaintiffs' requested injunctive relief.  *See GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1211 (9th Cir. 2000) (holding that the district court did not abuse its discretion in authorizing a bond less than that requested by the defendants

1  because imposition of such a bond would have precluded the preliminary injunction to take
2  effect).

3  Defendants argue that a bond is required because if Plaintiffs fail to prevail, then the
4  lender will have suffered a loss. (ECF No. 45 at 8-9.) Defendants propose that the Court order
5  Plaintiffs to make monthly note payments of $3,516.85. (*Id.* at 9.) As previously inferred,
6  Defendants failed to adequately assess Plaintiffs' ability to repay the loan, considering Plaintiffs
7  Diana and Trinidad Ramos' combined income totals to $3,664.00 which is scarcely sufficient to
8  pay the Refinance Loan's monthly payments. To require Plaintiffs to pay $3,516.85 per month
9  would be beyond their means. Furthermore, the fiscal impact Defendants fear is largely
10 speculative. *See Orantes-Hernandez*, 541 F. Supp. At 385 n.42. Although Defendants allege that
11 they are unable to pay their bills unless the foreclosure moves forward, such hardship only arose
12 once Plaintiffs filed a motion for preliminary injunction and was not mentioned in their
13 opposition to the motion for temporary injunctive relief. (*See* ECF Nos. 18, 45.) As someone
14 who has "been making loans for a number of years," the Court infers that Defendant Barns and
15 Keftman are not likely to suffer substantial harm because of a delayed foreclosure. (ECF No. 45
16 at 11.)

17 Accordingly, there is insufficient evidence that Defendants will suffer significant
18 additional damages because of the preliminary injunction. Therefore, the Court will not require
19 Plaintiffs to post a bond at this time. *See Conn. Gen. Life Ins. Co. v. New Images of Beverly*
20 *Hills*, 321 F.3d 878, 882 (9th Cir. 2003) ("The district court is afforded wide discretion in setting
21 the amount of the bond, and the bond amount may be zero if there is no evidence the party will
22 suffer damages from the injunction.") (internal citation omitted)).

23 **D.   Defendant Lennar Title, Inc.'s Limited Opposition**

24 Defendant Lennar Title filed a limited opposition to assert that it is not one of the parties
25 seeking to foreclose on Plaintiffs' property. (ECF No. 43 at 2.) Defendant Lennar Title further
26 states that it is not a party to the Deed of Trust being foreclosed upon and it has no legal or
27 equitable interest in the property that is subject of the foreclosure. (*Id.*) Rather, Defendant
28 Lennar Title explains that it is merely an escrow holder for the subject transaction. (*Id.*) As an

escrow holder, Defendant Lennar Title's responsibilities and liabilities are strictly limited to compliance with the escrow instructions. *See Summit Fin. Holdings, Ltd. v. Cont'l Laws. Title Co.*, 27 Cal. 4th 705, 711 (2002) ("The agency created by the escrow is limited—limited to the obligation of the escrow holder to carry out the instructions of each of the parties to the escrow."). Therefore, Defendant Lennar Title requests that it not be included in the preliminary injunction, if it issues, because it is not involved in the conduct Plaintiffs seek to enjoin. (*Id.*) Further, Defendant Lennar Title refers the Court to its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 3.)

Therefore, the Court will not subject Defendant Lennar Title to this Court's order for a preliminary injunction.

**CONCLUSION**

For the reasons stated above, Plaintiffs' motion for preliminary injunction, (ECF Nos. 34, 35), is granted pursuant to the terms below:

1. The Court orders that Defendants Funding Rush, Inc., Andrew Adrian Dioli, Ralph Martinez, Jay Turner, Lil' Wave Financial, Inc. dba Superior Loan Servicing, Lexington Mortgage Company dba Lexington, Spiros Cheng, Richard Barns, Katherine Heftman, Silicon Private Capital, LLC, Bethany Dioli, individual and DOES 1-50, and their agents, servants, employees, and partners ("Defendants") and any person or entity acting in concert with them shall be restrained and enjoined from:
   a. Enforcing or acting upon the Notice of Default and Election to Sell Under Deed of Trust recorded in the Fresno County Recorder's Office on June 20, 2023, regarding real property commonly known as 5610 N. Hazel, Fresno, CA 93711 ("Subject Property");
   b. Engaging in or causing any act to dispossess Plaintiffs from the Subject Property;
   c. Engaging in or causing any act to obtain possession of the Subject Property;
   d. Commencing or otherwise initiating any other proceeding or act regarding Plaintiffs' interest in or possession of the Subject Property, until this action can

be tried on the merits, or until further order by this Court.

2. No bond shall be required to be posted by Plaintiffs pursuant to Rule 65(c) of the Federal Rules of Civil Procedure;

3. This preliminary injunction is issued without prejudice to Plaintiffs or Defendants seeking additional discovery or other equitable or legal relief as appropriate; and

4. The preliminary injunction is effective immediately and shall remain in full force and effect through the date on which judgment, if any, as to the enjoined Defendants is entered in this case.

IT IS SO ORDERED.

Dated: August 15, 2023

UNITED STATES DISTRICT JUDGE