UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRINIDAD RAMOS, an individual; DIANA RAMOS, an individual, and ERIC L. RAMOS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>FUNDING RUSH, INC., a California Corporation; ANDREW ADRIAN DIOLI, an individual, RALPH MARTINEZ, an individual; JAY TURNER, an individual; LENNAR TITLE, INC., a California Corporation; LIL' WAVE FINANCIAL, INC., a Nevada Corporation, doing business as SUPERIOR LOAN SERVICING; LEXINGTON MORTGAGE COMPANY, doing business as LEXINGTON; SPIROS CHENG, an individual; RICHARD BARNES, an individual; KATHERINE HEFTMAN, an individual; SILICON PRIVATE CAPITAL, LLC; BETHANY DIOLI, an individual and DOES 1–50,<br><br>Defendants.<br><br>SILICON PRIVATE CAPITAL, LLC,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>ONPOINT APPRAISAL SERVICES, INC.; and RYAN C. JONES, an individual,<br><br>Third-Party Defendants. | No. 1:23-cv-01016-KES-HBK<br><br>ORDER GRANTING THIRD-PARTY DEFENDANTS ONPOINT APPRAISAL SERVICES, INC. AND RYAN C. JONES'S MOTION TO DISMISS<br><br>(Doc. 100) |

1

OnPoint Appraisal Services, Inc. ("OnPoint") and Ryan C. Jones, the chief executive officer of OnPoint, move to dismiss defendant and third-party plaintiff[1] Silicon Private Capital, LLC's ("Silicon") third-party claim for negligence. Doc. 100 ("MTD"). For the reasons explained below, the Court grants the motion with leave to amend.

I. **Background**[2]

This is an action brought by plaintiffs Trinidad, Diana, and Eric Ramos for, primarily, predatory lending and fraud against a group of defendants who allegedly deceived plaintiffs into refinancing the mortgage on their home on terms that were extremely unfavorable to plaintiffs. *See* Doc. 21 ("FAC"). The defendants are: (1) the loan brokers who arranged the transaction: Funding Rush, Inc. ("Funding Rush"), which is owned by defendant Andrew Dioli, and Lexington Mortgage Company ("Lexington"), which is owned by defendant Spiros Cheng, *id.* ¶¶ 8–9, 12, 13–15; (2) the lenders: Richard Barnes, Katherine Heftman, and Silicon, which is owned by defendant Bethany Dioli (the wife of Andrew Dioli), *id.* ¶¶ 10–12, 16–17; (3) Ralph Martinez and Jay Turner, two individuals who were employees of both Funding Rush and Lexington, *id.* ¶¶ 18–19; (4) the loan servicer: Lil Wave Financial, Inc., *id.* ¶ 7; and (5) the escrow company: Lennar Title, Inc. ("Lennar"), *id.* ¶ 20. The facts underlying this controversy are set forth in more detail in several prior orders. *See, e.g.*, Docs. 57, 123, 128.

---

[1] The parties incorrectly refer to Silicon as the cross-claimant and its negligence claim as a cross-claim. *See* Docs. 64, 100, 102. However, because OnPoint and Jones were not parties to this action until they were impleaded by Silicon's original pleading, *see* Doc. 51, the dispute between Silicon, Jones, and OnPoint falls under the umbrella of third-party practice. *Compare* Fed. R. Civ. P. 14(a) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a *nonparty* who is or may be liable to it for all or part of the claim against it." (emphasis added)) *with* Fed. R. Civ. P. 13(g) ("A pleading may state as a crossclaim any claim by one party against a *coparty* if the claim arises out of the transaction or occurrence that is the subject matter of the original action . . . ." (emphasis added)). However, "courts generally have ignored the nomenclature actually used by the pleader and have treated the claim as if it had been properly labeled, applying the standards related to that type of claim." *Met. Life Ins. Co. v. Cronenwett*, 162 F. Supp. 2d 889 (S.D. Ohio 2001) (quoting Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 Federal Practice & Procedure, Civil 2d § 1407 at 40 (1990)). The Court will thus employ the terms associated with third-party practice in this order.

[2] The allegations made in Silicon Private Capital, Inc.'s first amended-cross complaint/third-party complaint are assumed to be true for the purposes of the pending motion. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

On August 9, 2023, Silicon filed a cross-complaint/third-party complaint, Doc. 50, and on September 20, 2023, filed a first amended cross-complaint/third-party complaint, Doc. 64 ("FACC"). Silicon asserts a cross-claim against Martinez, Lexington, and Funding Rush for contribution and indemnity, a cross-claim against Lexington and Funding Rush for breach of fiduciary duty, and a third-party claim against third-party defendants OnPoint and Ryan C. Jones, the chief executive officer of OnPoint, for negligence. FACC.

Silicon alleges that it made a refinance loan to plaintiffs in August 2022. FACC ¶ 34. In doing so, Silicon alleges that it relied on an appraisal report prepared by Jones, in his capacity as an appraiser for OnPoint, that falsely stated that plaintiffs' home was tenant-occupied rather than owner-occupied. *Id.* ¶¶ 35–37. The appraisal report is attached to the first amended cross-complaint/third-party complaint. Doc. 64, Ex. A ("Rprt.").

On October 21, 2024, OnPoint and Jones moved to dismiss Silicon's third-party negligence claim. Doc. 100 ("MTD"). Silicon filed an opposition, Doc. 102 ("Opp'n"), and a request for judicial notice, Doc. 103 ("RJN"), and OnPoint and Jones filed a reply, Doc. 104 ("Reply").

**II.    Legal Standard**

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the pleadings. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A third-party plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [third-party plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [third-party defendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The pleading must contain facts that "nudge [the third-party plaintiff's] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. In evaluating a Rule 12(b)(6) motion to dismiss, the Court treats documents attached to the complaint and incorporated by reference as part of the pleadings. *Hal*

3

*Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1554–55 & n.19 (9th Cir. 1989).

To determine whether a pleading states a claim on which relief may be granted, the Court accepts as true the allegations in the pleading and construes the allegations in the light most favorable to the third-party defendant. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). A court may also "consider certain [other] materials—documents attached to the [third-party] complaint, documents incorporated by reference in the [third-party] complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). However, the Court need not assume the truth of legal conclusions cast in the form of factual allegations. *Iqbal*, 556 U.S. at 680. While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the-[third-party-]defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the third-party plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

**III.     Discussion and Analysis**

   a. **Negligence**

The Court grants OnPoint and Jones's motion to dismiss Silicon's negligence claim. Since the California Supreme Court's decision in *Bily v. Arthur Young & Co.*, it has been settled law in California that "an auditor owes no general duty of care regarding the conduct of an audit to persons other than the client," and therefore, "an auditor's liability for general negligence in the conduct of an audit . . . is confined to the client, *i.e.*, the person who contracts for or engages the audit services. Other persons may not recover on a pure negligence theory." 3 Cal. 4th 370, 376, 406 (Cal. 1992). This rule has been extended to real estate appraisers. *Soderberg v. McKinney*, 44 Cal. App. 4th 1760, 1768 (Cal. Ct. App. 1996); *see also Bily*, 3 Cal. 4th at 410 ("[Auditors] are not unique in their position as suppliers of information and evaluations for the use and benefit of

4

others. Other professionals, including attorneys, architects, engineers, title insurers and abstractors, and others also perform that function. And, like auditors, these professionals may also face suits by third persons claiming reliance on information and opinions generated in a professional capacity.").

The appraisal report, which is attached to Silicon's cross-complaint/third-party complaint, states that FMC Lending, not Silicon, is the client for whom the appraisal report was prepared. Rprt. at 14, 17. The appraisal report states that the "intended user" is the "lender/client," and the "lender/client" is identified as FMC Lending. *Id.* The appraisal report also states that the "intended use" is for FMC Lending to "evaluate the property that is the subject of this appraisal for a mortgage finance transaction." *Id.* at 17. The appraisal report does not mention Silicon or any other lender. *See id.* Given that a non-client of an appraiser, such as Silicon, may not recover against an appraiser on a pure negligence theory, Silicon's negligence claim must be dismissed. *Bily*, 3 Cal. 4th at 406; *Soderberg*, 44 Cal. App. 4th at 1768.

### b. Leave to Amend

In its opposition to OnPoint and Jones's motion to dismiss, Silicon appears to concede that it may not assert a pure negligence claim against OnPoint and Jones and instead requests leave to amend to plead a negligent misrepresentation claim and a breach of contract claim on a third-party beneficiary theory against OnPoint and Jones. *See* Opp'n at 5, 8 & n.7 (acknowledging that *Bily* held that a non-client may not recover under a pure negligence theory and stating that "based upon the foregoing authorities, at a minimum, claims lie against both OnPoint and Jones for negligent misrepresentation and, in the alternative, breach of contract on a third-party beneficiary theory," neither of which are pleaded in the first amended cross-complaint/third-party complaint). For the following reasons, these claims may be futile, but as there may be facts supporting these claims which were not pled in the first amended cross-complaint/third-party complaint, the Court will give Silicon one opportunity to amend the cross-complaint/third-party complaint to assert such claims.

### i. Negligent Misrepresentation

*Bily* held that, while non-clients of an auditor may not recover on a pure negligence

5

theory, specifically intended beneficiaries of an audit report may recover on a theory of negligent misrepresentation. *Bily*, 3 Cal. 4th at 407–15. The *Bily* court explained that

> there is a further narrow class of persons who, although not clients, may reasonably come to receive and rely on an audit report and whose existence constitutes a risk of audit reporting that may fairly be imposed on the auditor. Such persons are specifically intended beneficiaries of the audit report who are known to the auditor and for whose benefit it renders the audit report. [These specifically intended beneficiaries] may [therefore] . . . recover on a theory of negligent misrepresentation.

*Id.* at 407. The court was careful to highlight that specifically intended beneficiaries are not simply those third parties who may *foreseeably* rely on an audit report; rather, specifically intended beneficiaries are "those to whom or for whom the misrepresentations were made. Even though the defendant should have anticipated that the misinformation might reach others, he is not liable to them." *Id.* at 408.

The important inquiry is whether an auditor or appraiser

> has undertaken to inform and guide a third party[, a specifically intended beneficiary,] with respect to *an identified transaction or type of transaction.* If such a specific undertaking has been made, liability is imposed on the [auditor]. If, on the other hand, the [auditor] merely knows of the ever-present possibility of repetition to anyone, and the possibility of action in reliance upon [the information] on the part of anyone to whom it may be repeated, the supplier bears no legal responsibility."

*Id.* at 410 (quotations omitted). It is not necessary that "a real estate appraiser hired by a mortgage broker [] know the potential investors by name or specific identity. [L]iability may be appropriate where the defendant 'knows with substantial certainty that plaintiff, *or the particular class of persons to which plaintiff belongs*, will rely on the representation in the course of the transaction.'" *Soderberg,* 44 Cal. App. 4th at 1768 (quoting *Bily*, 3 Cal. 4th at 414).

The appraisal report does not identify a third-party beneficiary. *See* Rprt. To the contrary, it affirmatively states that the intended user is FMC Lending, not Silicon or any other lender. *See id.* at 14, 17. Indeed, the report itself states that "[t]he client may use this appraisal for a single loan determination only." Rprt. at 16.

In its opposition, Silicon points out that the appraisal report states that FMC Lending "may disclose or distribute this appraisal report to[] the borrower [or] another lender at the

6

request of the borrower . . . without having to obtain the appraiser's . . . consent." Opp'n at 6–7 (quoting Rprt. At 19).  This language indicates only that FMC Lending was permitted to disclose the appraisal report to another lender if the borrowers requested that they do so.  Silicon does not point to anything in the appraisal report which suggests that there was another lender or that it was intended that such other lender would use the appraisal report for its benefit.

The situation here is meaningfully different from the situation in *Soderberg*.  There, the appraiser had contracted with a mortgage broker to prepare an appraisal report.  *Soderberg,* 44 Cal. App. 4th at 1763–64.  The court explained that, in such a transaction, an appraiser would reasonably expect that the broker, who was responsible for helping a borrower obtain financing from a lender, would provide the appraisal report to potential lenders as "part of its marketing procedure." *Id.* at 1768–71.  Potential lenders needed an appraisal of the property so they could assess whether the value of the property was high enough to make the property adequate collateral for the loan. *Id.* at 1763–64.  The court discussed in detail that the lender in that case would make a loan to the borrower only if it was guaranteed by the appraisal report that the property was of sufficient value, and there was evidence that the appraiser knew the mortgage broker would provide the appraisal report to potential lenders for that purpose. *Id.*  Accordingly, the lender in that case may have been a specifically intended beneficiary of the appraisal report. *Id.* at 1770–72.

Here, however, the appraisal report was prepared directly for a lender, FMC Lending.  A lender, unlike a mortgage broker, would not be expected to provide the appraisal report to other lenders.  Instead, the lender would typically be expected to use the appraisal report for its own benefit to determine whether to make a loan to the borrower.  Thus, FMC Lending may well be the only party that the appraiser intended to benefit.  *See Bily*, 3 Cal. 4th at 409–10 (highlighting the importance of the "intent to benefit" language in the relevant section of the Restatement).

Given these circumstances, it may be unlikely that Silicon could successfully plead a negligent misrepresentation claim.  However, because there may be other facts or evidence which show that OnPoint and Jones knew FMC Lending would provide the appraisal report to parties like Silicon, the Court cannot determine that giving leave to amend would be futile.

### ii. Breach of Contract – Third-Party Beneficiary

For many of the same reasons, Silicon may not be able to state a claim for breach of contract against OnPoint and Jones on a third-party beneficiary theory. "California law permits third party beneficiaries to enforce the terms of a contract made for their benefit." *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1485 (Cal. Ct. App. 1998). However, "[t]he contracting parties must have intended to confer a benefit on the third party." *Spinks v. Equity Residential Briarwood Apartments*, 171 Cal. App. 4th 1004, 1022 (2009). Under the intent test, "it is not enough that the third party would incidentally have benefited from performance." *Id.* (quoting *Souza v. Westlands Water Dist.,* 135 Cal. App. 4th 879, 891 (Cal. Ct. App. 2006)). "Ultimately, the determination turns on the manifestation of intent to confer a benefit on the third party[,] . . . [and] [a]scertaining this intent is a question of ordinary contract interpretation." *Id.* (quotations omitted). Additionally, "the intended beneficiary 'bears the burden of proving that the promise he seeks to enforce was actually made to him personally or to a class of which he is a member.'" *Id.* at 1024 (citation omitted).

Silicon does not identify the contract that would have been breached. Instead, it discusses only the appraisal report, which is not a contract, but rather, the fruit of a contract between OnPoint, Jones, and FMC Lending. *See* Rprt. Even putting these issues to the side, however, Silicon may be unable to plausibly allege that Jones and OnPoint intended to confer a benefit on Silicon because, as discussed above, the appraisal report says that the intended user is FMC Lending, and there is nothing in the report which suggests that OnPoint and Jones intended that it would be provided to or used by another lender. As it is conceivable that Silicon may be able to identify additional facts to support this claim, the Court will give leave to amend.

///
///
///
///
///
///

## V. Conclusion and Order

Based upon the foregoing, OnPoint and Jones's motion to dismiss, Doc. 100, is **GRANTED** with leave to amend. Silicon may file a second amended cross-complaint/third-party complaint, consistent with the terms of this Order, within thirty (30) days of the entry of this Order.

IT IS SO ORDERED.

Dated: July 9, 2025

_____
UNITED STATES DISTRICT JUDGE

9